May it please the Court, our first and central submission this morning, Your Honors. Counsel, would you state your name for the record? I'm terribly sorry. I'm Larry Robbins. I represent the appellant, Stuart Wolff. Our first and central submission this morning, Your Honors, is that Judge Anderson, an AOL shareholder, should not have presided over this case. And I say that for two independent statutory reasons, both under 455B-4 and under 455A. Before you go any further, as to 455A, you folks made a motion and you made it quite clearly under 455B-4 only. The district judges ruled on B-4 only. Why have you not waived your claim that you now want to make to us that he should have recused under 455A? For several reasons, Your Honor. In light of our case law. I understand. First, I would suggest, Judge Fernandez, that under this Court's Preston decision, the decision of the Ninth Circuit, 455, the categories under 455B were construed in Preston as, in essence, subsets of 455A. So that to make an argument under 455B. Counsel, we have clearly said where somebody didn't raise a 455A, it was waived. Now, how do you get beyond that? We clearly said you didn't raise your 455A, it's waived. Well, in addition to my first submission, Your Honor, that 455B is in essence to argue 455A, I have two further points. What? I'm sorry. It is in substance to argue 455A because it is a subset which implicates 455A. So you're telling me that the brilliant lawyers who are representing this fellow in the district court were not wise enough to say, you know, we think that this district judge, even if he doesn't have a financial interest within the meaning of the law, the appearance is so bad he should recuse himself. They weren't wise enough to see that or argue that to the court. So they made it very specific to the court. They rifled it to that one section only. And when the judge ruled on that one section only, they didn't say, squawk, you forgot about A, Judge. So the only thing ever presented to the district court was the 455B-4. And you're telling me the lawyers weren't smart enough to put that in front of the judge? They just thought, well, he should just guess that. Is that right? Judge, I'm sorry. That's not or position. What is your position then about 455A? Well, in addition to the point I already made, let me make just two others, Your Honor. The first is the government has never contended in any of its briefing, not on the bail application, not on the bail appeal, and not in its merits briefing in this court, that we have waived our right to argue 455A. They have not made that argument. And I would respectfully suggest, Your Honor, that just as we can waive an argument, so, too, can the doctrine of waiver be waived. And it has been. You're right. There is a waiver of waiver. I'm sorry, Your Honor? You're right. There is a body of law and waiver of waiver. And how could that not be implicated here when not until this moment, Judge Fernandez, not until this moment has there been a suggestion that the failure to add 455A is material. Let me add one other thing, Your Honor. Although I can't say this with certainty, I think it is notable that Judge Walter's decision on the bail application intermingled the language of 455A with the language of 455B-4, because what he said is that no reasonable person would believe that Judge Anderson had a financial interest in the subject matter. But he very specifically said that he was dealing with a 455B-4. Yes, he did. Indeed. He never mentioned A there, either. He thought he was dealing with a B-4 even on the bail application, right? I agree with that, Judge Fernandez. I do. And I'm not saying that Judge Anderson had a financial interest in AOL. I mean, he said on the record he had a financial interest in AOL. No one's disputed he had a financial interest in AOL. And when there's a – when you have a financial interest in a company, it falls under 455B. Why are you – why does it even matter if we're talking about 455A? Ultimately, Judge Wardlaw, I don't think it does. Well, then let's drop A, okay? Well, perhaps I might just – Which has a whole separate set of jurisprudence that goes with it. It's not a – it's not a trivial point. And I hope I'm – the Court is not hearing me suggesting that it's the least bit trivial. It's not. As I said, so if B – if B is all that matters, then let's – Well, let me turn to B, since we certainly do have no question in our minds that financial interest in AOL is in this case a financial interest in the subject matter of the – in controversy. Now, why is that? Parenthetically, do we have anything in the record that tells us exactly how much of that AOL stock Judge Anderson owned? We don't. We tried to obtain that information in the course of this litigation, and the Court declined to answer it, and the Court's financial disclosures, unlike many judges, have all of that blacked out, so you can't tell. So we were not able – and of course – How has he managed to get the amount of his stock blacked out? I don't know the answer, and we've – I mean, I can't get the name of my kid's elementary school blacked out. But let me just say this, Your Honor. Of course, AOL has, what, 2,378,000,000 shares of stock? It does, but of course, as Your Honor knows, the statute is very clear that financial interest is any legal or equitable interest, however small. In – yes. Yes. Of course it does. The question really is, it's a prosecution against Mr. Wolfe for doing – for defrauding his company and perhaps his shareholders, but certainly his company, against Mr. Wolfe for that. Some people from AOL may have been part of that. Some of their officers may have been part of that. The government has never said that AOL was a co-conspirator, as I recall. But it never meant – so we've got prosecution against Wolfe, who happens to be the CEO of Home Store. AOL happens to own stock in Home Store, and he happens to own – the judge happens to own stock in AOL. So that's a little bit remote in terms of stock ownership, of course, but I understand your other thing about co-conspirators. But, of course, they weren't charged as a co-conspirator, were they? Well, Your Honor, there's so much more of AOL in this case than the examples the Court just set out. And if I could just quickly state why there is no question in our minds that AOL was the subject matter or integral to the subject matter of this case. They were named in the indictment as an intermediary that participated in secret deals for secret fees. They were named in the indictment as an entity that agreed to fraudulent round-trip transactions. They were identified in a pretrial letter as an arguable, unindicted co-conspirator. One of their high-level officers, Eric Keller, was in fact identified as an unindicted co-conspirator who had devised the triangular transactions. They were mentioned every two and a half pages, some 3,200 times in this transaction. And, Your Honor, the subject matter of the transaction is, of course, not only what the government wishes to prove, but, as the Fourth Circuit made very clear in the Rogers case, it's also the lines of defense, what the defendant is trying to prove. And in this case, Your Honor, AOL was absolutely center stage in the defense. There were two crucial defense motions that Judge Anderson presided over, though he had recused on an AOL motion to quash, thus implicating this circuit's ruling Feldman. And those two motions went to the heart of the defense. They first wanted to show that AOL, at the highest levels of the company, was on knowledge of these transactions. They second wanted to show that AOL, Your Honor, had engaged in a great many such transactions so that a defendant, knowing only what Mr. Wolfe knew, would not have been on the requisite mens rea. Those motions. How did this triangular deal actually work? Was AOL the second person in the deal or the third person in the deal? It depends which vertex you look at first. Okay. I'm imagining the triangle. Yes. It was home store to a vendor, vendor to AOL, AOL back to home store. So AOL was paying, what was the government's theory? AOL was paying too high a price for the online advertising? The theory, Judge Wardlaw, was that a home store would pay for goods and services it didn't really need or it would pay too much. A share of that money went to AOL. And then once AOL got that cut, so the triangular theory goes, they would rebate some percentage, some high percentage of that in the form of online ads in the home store website on behalf of third parties. AOL, of course, was charged for its part of this triangle by the Justice Department, by the SEC. They restated their financials twice. They were sued by a class action. Why weren't they brought into this case? Well, that's because they were prosecuted on the East Side. The East Coast for their side of these same transactions. The Eastern District of Virginia, my home, my home. That's where their headquarters is? AOL headquarters? Yes. They're in Dulles, Virginia. Okay. And they were prosecuted in Virginia for the exact transactions, not just the same kind of transactions, the exact transactions. What that means is that AOL shareholders like Judge Anderson have taken a beating over the years because of the precise transactions. There is such a close nexus between AOL and this case that no sooner was the verdict rendered in this case than the class action of home store class plaintiffs went into court and argued that their claims against AOL should be amended and bolstered by the verdict in this case, the testimony of Stuart Wolf, the testimony of the alleged co-conspirators. If you're trying to figure out what the shareholder class. Yes. That's a home store shareholder class suing AOL, among others. It sounds as if Judge Anderson would have been delighted to see Mr. Wolf found not guilty. Well, you know, I'm glad you asked me. Of course, of course, that's not the test and it can't be. Of course it's not. But, but, but, but, consider this, Judge Fernandez. In fact, if it mattered sort of whose ox was being gored, if that were the material test, in fact, Judge Anderson had competing interests financially in this case. On the one hand, he might have wished for an acquittal so that the AOL lawsuit wouldn't go so badly that he was potentially a plaintiff in. But on the other hand, consider this, Your Honor. AOL was claimed by the government to have sustained losses as a consequence of Mr. Wolf's conduct. They, therefore, are potential restitution awardees in this very case. They stand to get restitution. Is there an award of restitution to them? There was an award of restitution, but who gets it is up for grabs because it's been all the claimants are. But let me go beyond that, Judge Fernandez, because I'm really delighted to answer this particular question. Those two lines of defense I spoke of before, if the defense had been permitted to examine the witnesses they wanted to on how high up in the AOL hierarchy this knowledge goes and how many similar transactions there were out there such that that would have been an enormous embarrassment to AOL. Knowing that the public, knowing that these triangular transactions were approved at the highest level of management, knowing that they engaged in many, many such transactions with other public companies, not just Homestore, I suspect. Some of which were evil and some of which weren't or all of which were evil? Well, the government's theory is that triangular transactions by their nature. Well, that's what you say. But I think I agree with you that a triangle doesn't necessarily make evil. Indeed. But my point in the end, Your Honor, is that whether Judge Anderson was rooting for Mr. Wolf or not rooting or rooting against him, of course he wasn't rooting at all. And ultimately, these are prophylactic rules that don't require courts to make guesses about who a judge might privately want to win or lose. I'm not suggesting, and I hope the Court doesn't hear me suggesting, that I personally think that Judge Anderson, you know, was actually rooting one way or the other. I don't believe that. Of course, that's why it's very important to figure out what the theory is. The theory I take it is not the stock as such through AOL to Homestore. The theory is simply that AOL people participated in the fraud. Is that correct? The theory is that having stock in AOL when the conduct of AOL is so inextricably bound. Right. We're not considering the fact that AOL held stock in Homestore. That's right. Although I don't think that's immaterial, but that's not our central theory. You're exactly right. Our point is that holding AOL stock when AOL is joined at the hip with Homestore such that passing judgment on Stuart Wolf is inevitably drawing into question the legality of AOL's conduct. Let me ask you something that sort of puzzles me in this area. Let's say all this happened and Mr. Wolf had, assuming he had done anything wrong to start with, had an epiphany before anything was put on the books. There'd be no harm, no foul? Had an epiphany. He had an epiphany and that, gosh, we've got to report this on the books just the way it happened. We've got to tell the auditors and report it just the way it was, and then they can decide whether it was a good or a bad triangle. Right. So if that had happened, there'd be no problem now, is that right? Or would there? Well, I actually am inclined to say that if there was evidence that that had happened, if Mr. Wolf was on that kind of notice and had acted in that way, I suspect we wouldn't find ourselves here today and therefore the question would not be presented. I notice my time is dwindling and I'd ask Leif to reserve the balance for rebuttal. Sure. Thank you, Your Honor. Good morning, and may it please the Court. Michael Wilner for the United States. Since the recusal issue is the only one that was addressed on the opening argument, I'll obviously start there. And remind the Court that pretty much everything that was raised just now in the Court and in the appellate brief was not presented to the district court in the motion for recusal. Well, now, they made a motion. They asked for oral argument, and Judge Walters didn't give oral argument. He just ruled. That's correct, Your Honor. And all they had submitted was a very brief motion under 425. That's all that's necessary, isn't it? That is, Your Honor. Did you ever squawk about anywhere about their having waived 455A? I didn't, Your Honor. There were other issues on appeal that were taken up. The 455A argument was raised in the appellate brief, no question about it. But you've never argued that they waived that argument, have you? No, Your Honor, but if they had. Not that it's necessary to this case, given that Judge Anderson said on the record that he had a financial interest in AOL. And offered the parties the opportunity to get more information or do whatever they wanted to do. Do you have a remote understanding of that? This case, I have never seen a case where a judge, maybe a couple others, but extraordinarily rare, where a judge knows he has a financial interest, is aware, he's conscious he has a financial interest in a matter that's, I think what we have to argue about is was it a subject matter in controversy or not, but knows that and doesn't recuse. We, our judges tend to get tripped up by forgetting that they have a financial interest or something, or inheriting something, and they didn't realize they had a financial interest in proceeding a long trial and not having any awareness at all. And this is a really different case. Every single ruling that Judge Anderson made, he was aware that not only that he had a financial interest in AOL, but that a motion to recuse, he had been asked to recuse himself, he rejected that. And a motion to recuse had been brought before another judge, and that was denied. Now, at that point, you can't really fault the defense for not continuing to hammer because you don't want to irritate the judge. You can't. I mean, I know that's in your brief. Well, they should erase it again. Well, not really. That's not fair because now they're stuck in a trial before this judge. They've already tried to get him recused twice. It's not really fair to say you should keep hammering this judge. On the other hand, I've never seen a case where the judge says I have an interest in something that seems so directly in front of him, and he continued to preside. If I can, Your Honor, I'm aware of one motion that was made to recuse. That was a motion that was filed after Judge Anderson voluntarily disclosed his holdings in AOL. And Judge Anderson was the one who had that motion sent over to Judge Walter, the independent judge. It is whether he asked to recuse. Didn't they ask him at the time to recuse from the case when he recused from the motion?  Your Honor. Didn't he actually, didn't Anderson say he didn't want to recuse? He wasn't going to recuse from the rest of it? No. I believe, Your Honor, that there was a motion to quash a subpoena that AOL itself filed. Judge Anderson voluntarily recused himself from consideration of that matter because AOL was coming in as a party, as a moving party. Judge Walter, the independent judge, later looked at that and thought that Judge  to quash it. Well, now, Judge Anderson himself brought this whole matter up at a pretrial hearing. Your Honor's correct. He voluntarily disclosed that and offered the parties the opportunity, said do whatever you need to do. And what the parties did, and I'm not going to hammer away at the delay issue, but they didn't do anything, including asking for more information about the holding. Judge Wardlaw's comment about additional information, that was a request that the defense made following the verdict. But you don't need additional information. All it takes under 455B is A, financial interest. What the argument is about is whether or not the interest was in, it doesn't matter how big, how small, none of that matters. All that matters is was the interest in the subject matter in controversy. And there's not a lot of law on what subject matter in controversy is. So tell us why you think it wasn't. I'd be delighted to, Your Honor. The defense referred to the Noble case, which is a Third Circuit case, in which the test was set forth, at least in the Noble case, that the subject matter means the affairs of a non-party are to be resolved in the criminal case. In other words, whether the result of the prosecution could make a difference to the affairs of the non-party corporation. That's the Noble test, which was not met here, Your Honor. But we didn't accept that theory in Rogers. So that part, as far as Noble goes, is kind of easy. Because in Rogers we said, even if you have shares in a victim, that's not necessarily good enough. But that's not exactly, neither of those is exactly this case. That's correct, Your Honor. And there were a couple of cases not cited by either party in the briefs, but I can bring them to the Court's attention. They're district court cases. McCann v. Communication Design, 775 FSUP, 1535. And Sollenbarger v. Mountain State. But year was that? 1991. What court? That is the District of Connecticut. And why wasn't it brought to our attention in the 1991 case? Because these are cases interpreting both Noble and 455b-4.  the Court is focused on. I'm just saying, why didn't you include them in your briefs so we could have looked at them? I am going to have to confess personal error on that, Your Honor. I didn't know them at the time, and they were not in either side's brief. But both of the Sollenbarger case and the McCann case try to give light to the. . . What is the other case number? Sollenbarger v. Mountain State's telephone, 706 FSUP, 776. And those have to be. . . I have not, Your Honor, and that's an error on my part as well. Please do that before you all leave today. I will, Your Honor. I apologize to the Court for that. These cases interpreting Noble and interpreting the Bremer case, which was cited in Noble, add to this test, which is to show that the party needs to show that the non-party corporation has a financial interest that will be directly linked to the outcome of the litigation. It's giving meaning to this subject matter clause. And given that this was a criminal case involving an individual who was the CEO of Homestore, not of the non-party, but the matter to be resolved by the jury and by the court was his criminal interest, his liberty interest, the indictment in this case alleged his misconduct with respect to Homestore's financial statements, with respect to dealings with Homestore's auditors, and the outcome of the criminal trial, Your Honor, in AOL, either in civil litigation, criminal litigation, there was no direct link at all to what would happen to AOL as a result of this matter. The most that could be said, Your Honor, is that AOL witnesses were going to be called and that aspects of AOL's business dealings would be discussed. But, Your Honor, if Congress had intended to prohibit a judge from hearing a case like that, Congress could have made that statute clearer, could have included a prohibition on owning stock in a non-party witness. Well, wait a minute. The subject matter here was this deal in which AOL was a key participant, right? I would have to say, Your Honor, that the subject was Dr. Wolf's conduct and the financial statements that Homestore filed. That's slicing it a little narrow. So you didn't need any evidence of AOL's conduct in order to convict Mr. Wolf? We didn't need any evidence as to whether AOL acted. Is that why AOL doesn't appear in 17 counts in the indictment? Well, that's true as well, Your Honor. But we didn't need to prove whether AOL acted positively, negatively, legally, or illegally. But you weren't trying AOL. That's true. But AOL's conduct was within the subject matter of what was tried. But the outcome of this case could have no impact at all on AOL or by inference on any AOL shareholder. Well, it seems as though it did. I'm not aware of it, Your Honor. By the time this trial, this case went to trial, it was five years after the events in controversy. The events were in the spring and summer of 2001. The criminal trial, five years later. All of the actions that the defense is talking about now, civil actions and SEC actions, had been resolved beforehand. The AOL's, to the extent AOL was stated, a small amount, a very small amount. I thought the restitution order was going to go to the claimant's friends in the class action. Potentially, yes, Your Honor. And I think it would be. So doesn't that affect AOL shareholders? And I think the Court's ruling in Rogers, in that case, AOL is a victim. Answer my question. Yes, Your Honor. Doesn't that affect AOL shareholders? To the extent that AOL is a victim and receives restitution from the person who committed the crime, absolutely. And that type. AOL shareholders, yes. Yes, Your Honor. Okay. That's Judge Anderson. Yes, Your Honor. And that's also the Rogers case. In the Rogers case, the district judge owned stock in the bank that was defrauded. And the restitution was ordered to be repaid to the bank and by inference to all of that bank's shareholders, including the district judge. And in this Court's Rogers case, the Court said that that's not financial interest that's prohibited under the statute, because a victim corporation is not sufficient because the district judge's financial holding is obviously so small. But that's just not sufficient. So I think the Rogers case, as well as the Noble case, both speaking on this point. Now, one thing in Rogers, of course, there was an indication that he had a very small his shareholding in Bank of America, was it, or his holding company or something, was very small. We don't know that here, do we? I mean, he might own 2 billion shares of Time Warner. He might, Your Honor. And I submit that that was the defense's obligation to get that information to present sufficient evidence in the district court. This Court doesn't have sufficient evidence in front of it and in the record. And this was an issue raised before trial, before a lengthy criminal trial, Your Honor. And for there to be an ambiguity on the record as to this issue, Your Honor, I think that that is a burden that the defense bears, having brought forth the motion, but having brought it forth in really an incomplete manner and really on an issue where the district judge had raised it. They say that they attempted to get the district judge to tell them how much it was and he refused. I'm not aware of anything in the record that shows that. I'm not aware of anything, Your Honor. I am aware that following the verdict being returned, there was an effort made by the defense to obtain some sort of financial disclosure form. And as I looked at it, I saw the same redacted version following the trial that the defense lawyer just raised. But that was not associated with the trial? I would say the attempt was not from the judge. It was from those financial reports we filed. That's correct, Your Honor. I'm not aware of any refusal. What I'm aware of is the judge inviting the parties to seek more information and do whatever is necessary months before the trial began. Well, even if it is nothing but an iota, the most insignificant amount that you could  I think I would step back and say that that a reasonable observer wouldn't come to that conclusion, because, again, the impact of the issues in this case could have no conceivable impact, there would be no reason to believe that the judge would be fair or unfair given this attenuated financial relationship. This is not the prophylactic de minimis requirement. This is a more realistic, more of a balancing test here, Your Honor. And if the judge as an individual had some amount of, a minor amount of stock in a large corporation, a vast AOL Time Warner is a huge corporation where one business unit's minor business dealings with a very small dot-com company, years after the to determine the CEO of the internet company's culpability, I don't think that, I mean, it's a fact-based determination, but I don't think that it's fair to say that that's a reason to question the impartiality of the district judge. Well, you know, what runs the flag up the poll is the fact that Judge Anderson recused himself in two different situations. Judge Walter, I think, stepped in. Now, doesn't that send some kind of a signal in and of itself that, oh, wait a minute, guys, what's going on here? I mean, we're talking about millions of bucks, a lot of money, a lot of criminal activity. With respect to Homestore, the answer is absolutely, Your Honor. The concept of AOL and Homestore being joined at the hip gives the appearance that these are peer companies. They're really not. AOL, as the Court knows, is a vast, huge company. If Judge Anderson had not recused himself from consideration of the motion to quash, if he had not recused himself from consideration of the broader motion to recuse, I think this Court would have had much more significant issues. I think, in fairness to the district court, he recognized these issues. He took himself out of one of the matters altogether and did not issue a ruling that potentially could affect the company he owns, Stocking. As to the other one, he put it back and had an independent judge evaluate it based on the minimal showing that was made by the litigant. He's now being second-guessed for having acted independently and appropriately here, Your Honor. I think that's the issue here. If I could spend a little bit of time. Ginsburg. Can I go back to the Rogers case? Because something you said. What we said in Rogers was that we said, yes, Judge Tavizian is one of millions of stockholders and Bank of America held a limited financial interest in the purported victim of the crime. But we also said that following the initial appeal, we ordered that if Rogers was resentenced, he could not be ordered to pay restitution, which distinguishes Rogers from the case here, where Judge Anderson did order restitution. So they're not in the same situation. That is something that could be remedied not by a reversal and a remand for a new trial, Your Honor. But that could be addressed with respect to the restitution issue. You know, I don't see it as such a disastrous thing. I mean, I understand the government's position, oh, we don't want to have a retrial, and there's, what, 25 counts, 17 of which mention AOL. That's a huge case. But didn't you put yourselves in this position? I mean, you knew, too, that Judge Anderson had a financial interest, and you were willing to take the risk of that to have Judge Anderson remain on the case. I don't disagree with you at all, Your Honor. And the matter was presented to an independent judge for evaluation so that we wouldn't be addressing this for the first time, say, post-trial. Another judge would be. But who presented the matter? Oh, the defense filed this motion, Your Honor. Right. But did you file? Did you file anything? We did not, Your Honor. Because on the face of it, Judge Walter determined that this was an insufficient showing, that this was not a matter to be concerned about. Before the time for filing a response. I believe that's correct, Your Honor. Yeah. I mean, if the government had filed a response and if the government had tried to address this issue. Well, what was the government's position? I don't know. As I stand here right now, Your Honor, I don't know because this was. But you're opposing it now. I am, Your Honor, because I'm defending that decision because that decision. Did the government take any position back when the events were occurring? We provided additional information for the court at the hearing at which the judge disclosed his interest in AOL. The government provided more information about the role of AOL in the transactions, which was as a conduit of money here. The Court's understanding of the triangles is correct. Money flowed through AOL. We disclosed to the court that AOL might or witnesses associated with AOL might testify. The government ended up calling two, one of whom only testified for about ten minutes. So we provided information to the district court. But when this matter went to the independent judge for evaluation, it came back very quickly that this was not a matter of concern and that the case could proceed, and it was an important case that we took to trial. Unless the Court has more questions on that, I would like to spend a moment on this expert issue, because the argument on appeal, Your Honor, is not as it was presented in the district court and at trial. On appeal, this structure alone theory, and it's in quotations in the defense brief, this concept that the government somehow argued that because triangle deals were involved that everyone should have known these deals were illegal, that's not the government's position. That was not the government's position at trial. That was not how the case was tried. And, in fact, during closing argument, not only did the defense point that out, but, Your Honor, the government disavowed any kind of argument that the jury could infer fraud merely because of the defendant's supposed knowledge of the structure of the transaction. In the government's rebuttal agreement, it's in the record at defense – it's in the defense excerpts at page 659. It was at page 184 of the reporter's transcript for June 20. In the government's rebuttal argument, the government said, quote, yes, three people can have transactions in which they legitimately buy products from each other. That's not the issue here. And the government went on to list all of the direct evidence showing that the defendant had personal and direct knowledge of a fraud scheme. The government's case at trial was that the defendant was in on the fraud scheme and not some passive observer who should have known what was going on and stepped up. In light of that, Your Honor, the decision to exclude the expert who was going to come in and talk about this objective issue of one would need to know more about triangular deals to determine what the accounting treatment should be and, by extension, to infer fraud for the defendant, that really wasn't relevant. And the district judge made this decision after trial began, after opening statements, after the government's case, and after the defense testimony, and after receiving numerous submissions that changed very dramatically about what this expert would  And the district judge gave an extended explanation of his ruling. That's at the government's excerpts 297 to 299. And an extensive statement from the district court gave two independent bases, two independent reasons why this evidentiary ruling was sound. The first reason was that basically this Court's ruling in Shoal, an objective statement by an expert on an issue that has to do with the defendant's subjective belief, is not helpful to the jury under 702 and 704. The second reason was a 403 determination that the testimony had changed and that Ms. Alexander, a government witness and investment banker, had basically given the same testimony about round-trip deals that the expert had offered. I see my time is up, and I will thank the Court for its time.  Thank you, Counsel. If it pleases the Court, I'd like to make three or four very quick points. First, the proposition that we have to show that Judge Anderson's financial interest could be substantially affected by the outcome of the case, a proposition for which the government cited some out-of-circuit cases, is dispositively rejected, dispositively verbatim rejected by this circuit in in-ray cement antitrust litigation, 688 F. 2nd of 1308. You don't have to search for out-of-circuit district court cases never shown to us or this panel, because this circuit said so in black and white. Second, the proposition that Judge Anderson's standing to get restitution as a member of an AOL of the AOL shareholders is foreclosed by Rogers, this Court's Rogers decision is also false for precisely the reasons that Judge Wardlaw identified. At 119 F. 3rd at 1384, this circuit said that we've already ruled that the judge cannot get restitution because it's not available in this case. Third point, if we had to show that Judge Anderson's financial interest was substantially affected, we could and we did, because no sooner was the verdict rendered in this case than the class of eight home store shareholders came into the central district of California and argued in this document, in the record that we've put in the appendix, that their claims against AOL should be amended to put, to argue and to add as evidence the verdict in this case, the testimony in this case, the evidence in this case. And where is that in the record in this case? You know, I'm just looking at it and I don't see it in the excerpts of record. It is a publicly filed document and I can, I can make it available through a 28-J letter and we've cited the docket. Didn't you ask that we take judicial notice of it? I would suggest that the Court can, and it's a filed document in the central district of California, Western Division. Let me add one last point. Judge Mills, you adverted before to the fact that Judge Anderson did in fact recuse himself on at least one matter, and that's true. He took himself out of the AOL motion to quash. I would respectfully suggest that that triggers this circuit's Feldman Doctrine, which says, which makes the common sense point, that you can't step in and out of a case if you have found the kind of recusable event that warranted Judge Anderson's recusal at that stage. He should and under Feldman must have recused for all purposes. Let me add one last thing. The suggestion that everything I said in my opening was not made available to Judge Walters in the motion to recuse is manifestly untrue, and I would direct the Court's attention to the government's excerpts of record 331 and following, where the defense made almost all the arguments I'm making today in the motion to recuse the judge, and I would respectfully suggest the Court can read them for itself. I thank the Court for its time and attention this morning. Thank you, counsel. The matter just argued will be submitted at this time, and the Court will be in recess.
judges: Fernandez, Wardlaw, Mills